Krista M. Enns (CA 206430)
Ziyong "Sean" Li (CA 289696)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
kenns@beneschlaw.com
sli@beneschlaw.com

Stella Havkin, SBN 134334
Havkin & Shrago Attorneys at Law
5950 Canoga Avenue, Suite 400
Woodland Hills, CA 91367
Telephone: (818) 999-1568
Facsimile:  (818) 293-2414
Email: stella@havkinandshrago.com

Attorneys for Plaintiff Thailight Semiconductor Lighting (HK) Co., Ltd.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>Sufeng Lin,<br><br>Debtor.<br><br>―――――――――――――――<br><br>Thailight Semiconductor Lighting (HK) Co., Ltd.,<br><br>Plaintiff,<br><br>vs.<br><br>Sufeng Lin,<br><br>Defendant. | Case No. 6:24-bk-10989-RB<br><br>Chapter 7<br><br>**PLAINTIFF THAILIGHT SEMICONDUCTOR LIGHTING (HK) CO., LTD.'S COMPLAINT FOR:**<br><br>(1) NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §523(a)(2);<br>(2) NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §523(a)(6);<br>(3) NONDISCHREABILITY OF DEBT PURSUANT TO 11 U.S.C. §523(a)(19); and<br>(4) OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. §727(a)(5). |

Plaintiff Thailight Semiconductor Lighting (HK) Co., Ltd. states as follows:

## I. PARTIES AND JURISDICTION

1. This is an adversary proceeding in bankruptcy brought by Plaintiff pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(6), 523(a)(19).

2. Plaintiff is a creditor of Debtor, Sufeng Lin, in the above referenced bankruptcy case.

3. Defendant Sufeng Li is the Debtor in this bankruptcy proceeding, case number 6:24-bk-10989-RB ("Debtor.")

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157(b)(1).

5. Venue properly lies in this judicial district pursuant to 28 U.SC. §1409 in that the instant proceeding is related to the bankruptcy case presently pending under Title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California.

## II. GENERAL ALLEGATIONS

### A. PRE-PETITION CONDUCT AND EVENTS—INITIAL INVESTMENT

6. Plaintiff and Debtor are in the business of making, distributing, and selling lighting products.

7. On or about April 16, 2021, Debtor approached Plaintiff, seeking a business partner for a joint venture to sell products to Home Depot.

8. On or around May 4, 2021, the Debtor informed the Plaintiff of an established sales channel with Home Depot. The Debtor proposed that the Plaintiff purchase a specified number of shares in a newly formed company, subsequently identified as "Focus Worldwide Lighting Corp." ("Focus"), which was intended to carry out this Home Depot-related business.

From the outset, Debtor emphasized the company's strong valuation and high demand for its shares, asserting that a lawyer had appraised the shares at a value of $96,000 per share.

10. To reinforce the legitimacy of the valuation, on or about May 5, 2021, Debtor presented a signed agreement from a recent buyer—an individual who was, notably, a practicing lawyer.

11. Debtor emphasized this detail, indicating that someone with a legal background and professional discernment found the price to be fair and the company's shares to be a sound investment.

12. This reference to the lawyer-buyer was meant to assure Plaintiff of the validity and attractiveness of the proposed price, leveraging the lawyer's profession to signal due diligence and credibility in assessing Focus's value.

13. Plaintiff relied on what was later discovered to be a misrepresentation regarding the prior transaction. The emphasis on the lawyer's agreement created the impression that a discerning, well-informed individual found the valuation reasonable, which instilled confidence in Plaintiff about the legitimacy of the proposed price.

14. As a result of Debtor's representations, Plaintiff proceeded with the transaction under what was ultimately a false sense of validation regarding the value of the shares. Plaintiff agreed to purchase 20% shares of the business, Focus, at a price of $1.5 million.

15. Plaintiff entered into a Share Purchase Agreement ("SPA") on or about June 8, 2021 with Debtor.

16. Pursuant to the SPA, Plaintiff agreed to pay Debtor a Purchase Price of $1.5 million. In exchange, Debtor agreed to give Plaintiff a 20% ownership share of Focus, equivalent to 2,000 of Focus's 10,000 shares.

3
COMPLAINT

17. On or about June 21, 2021, in compliance with the terms of the SPA, Plaintiff wired Lin $500,000. On or about July 19, 2021, Plaintiff wired Lin another $500,000 of the Purchase Price. On or about September 1, 2021, Plaintiff wired Lin the last $500,000 of the Purchase Price.

18. Since then, the value of Focus has been diminished significantly due to Debtor's mismanagement. Such management and operation are reckless, chaotic, and self-dealing taking the most favorable view.

19. For example, Focus, under the management of Debtor, had several transactions where Focus wired significant amount of money out to another company, HSL Worldwide Lighting, that was controlled by Debtor.

20. These transactions include but not limited to 1) a wire transaction on September 16, 2021, 2) a wire transaction on September 28, 2021, 3) a wire transaction on October 28, 2021, 4) a wire transaction on November 29, 2021. On information and belief, the total amount of the wire transactions to HSL Worldwide Lighting is over $200,000.00.

21. On information and believe, Debtor had Focus rent office from HSL Worldwide Lighting without authorization so that HSL Worldwide Lighting could collect rental income from Focus.

22. On information and believe, HSL Worldwide Lighting is also a source of Focus's payroll expense.

23. On information and belief, Focus, while under Debtor's management, extended several significant loans to Debtor without proper authorization.

24. As a result, Focus's equity position became negative.

**B. PRE-PETITION CONDUCT AND EVENTS—CRYPTOCURRENCY FRAUD**

25. In November 2021, Debtor approached Plaintiff requesting money for a potential investment related to the Home Depot business.

26. Debtor represented that Plaintiff's investment would be used to fulfill an order related to Home Depot and once the order was fulfilled and the money was paid, then Debtor would return the money immediately.

27. On or about November 29, 2021, Debtor said to the Plaintiff, "tomorrow [I] have to tell my classmate at [Home Depot]. If we do it, [we need to] wire out the money from our company. In this way, [Home Depot] will pay us. We will have 10% profits."

28. Plaintiff agreed to provide Debtor the $1 million fund.

29. The parties memorialized this transaction in writing. In or about November 2021, Debtor signed a "Short-term investment" document.

30. Plaintiff wired $1 million to Debtor's Bank of America account on December 1, 2021.

31. Unbeknownst to Plaintiff, Debtor did not use the $1 million fund for the Home Depot business, but rather invested it in cryptocurrency.

32. On or about December 11, 2021, Debtor informed Plaintiff that the $1 million fund was invested in cryptocurrency and was stolen.

**C. DISTRICT COURT CASE**

33. On September 20, 2022, Plaintiff filed a lawsuit in the Central District of California (CDCA) against Debtor concerning the above transaction, case number 5:22-cv-01650-SSS-SHK.

34. However, during the District Court proceeding, Debtor's counsel filed a motion to withdraw, asserting an inability to contact Debtor and a lack of response from Debtor, including

non-responsiveness to discovery requests. The District Court granted the motion, allowing Debtor's counsel to withdraw. Since then, Defendant has not provided the requested discovery.

35. Before Debtor's counsel withdrew, Plaintiff learned through Debtor's early interrogatory response that Debtor had already intended to use the $1 million funds for cryptocurrency purchases while requesting the money from Plaintiff for use in the Home Depot business. She created a false story in order to obtain the $1 million funds from the Plaintiff under the pretense of an investment.

36. Subsequent to the fact discovery cut-off on February 23, 2024, Plaintiff learned that Debtor filed her Chapter 7 bankruptcy case on February 29, 2024.

37. On August 15, 2024, the District Court stayed the entire case, pending the outcome of the bankruptcy proceeding.

**D. BANKRUPTCY CASE**

38. On February 29, 2024, the Debtor filed her Chapter 7 bankruptcy case.

39. After the Court issued a Scheduling Order, Plaintiff filed its Motion for Order Authorizing Thailight To Conduct Examinations And Issue Requests For Production As To Debtor And Third Party Pursuant To Fed. R. Bankr. P. 2004 And 9016 on May 22, 2024.

40. The Court granted the Motion on June 7, 2024, allowing Plaintiff to begin discovery. Despite continued efforts to locate the third party, the Debtor's ex-husband, Plaintiff was ultimately able to depose the Debtor following an extension.

41. During the Debtor's deposition on September 13, 2024, Plaintiff first learned key information showing that the Debtor committed fraud when initially soliciting investment from Plaintiff. Plaintiff also obtained testimony detailing the fraudulent actions taken by the Debtor when requesting the loan.

42. Specifically, regarding the valuation of Focus prior to Plaintiff entering into the share purchase agreement, Debtor failed to disclose that the previous buyer had subsequently rescinded the agreement, effectively nullifying any validation that the lawyer's initial purchase might have suggested.

43. The prior buyer's decision to withdraw from the transaction, followed by a full refund of the payment, was a material fact that Debtor's knowingly withheld. Despite presenting the lawyer's prior agreement as if it were an active and binding transaction, Debtor intentionally omitted that it no longer had any bearing on the current market value or demand for shares in Focus.

44. During her deposition in this bankruptcy case, Debtor admitted that in a message requesting the $1 million funds, she referenced needing to get back to "HD" if she could secure the funds. In her deposition, she confirmed that "HD" referred to Home Depot. This admission demonstrates that she cited Home Depot business purposes as the reason for borrowing the funds, while her actual intent was to use the money for cryptocurrency purchases.

## FIRST CLAIM FOR RELIEF

## (MONEY AND SERVICES OBTAINED BY FALSE PRETENSES, FALSE REPRESENTATIONS, AND ACTUAL FRAUD PURSUANT TO 11 U.S.C. §523(a)(2)(A))

45. Plaintiff refers and incorporates herein each and every allegation contained in paragraphs 1 through 44, of this Complaint as though fully set forth at length herein.

46. Debtor falsely represented that Focus's valuation was supported by a lawyer's share purchase agreement, knowingly and/or recklessly omitting the fact that this agreement had been rescinded and all deposits refunded. This omission constituted a material fact that the Debtor knowingly withheld. By presenting the lawyer's prior agreement as though it remained an active, binding transaction, the Debtor deliberately concealed that it no longer had any relevance to the current market value or demand for shares in Focus.

47. Debtor intended to create a false impression that Focus's shares were so solidly valued and desirable that even a discerning, legally trained buyer—a lawyer with expertise in evaluating transactions and legal agreements—had deemed the price fair and worthy of investment. By emphasizing the lawyer's involvement, Debtor sought to lend additional credibility to the valuation, implying that someone with specialized knowledge had already vetted and validated the worth of the shares. This false impression was carefully crafted to reassure Plaintiff of the legitimacy of the proposed price, making it appear as though any concerns about the valuation were unwarranted. In reality, however, this impression was false, as Debtor concealed the critical fact that the lawyer-buyer had rescinded the agreement, rendering the implied validation meaningless.

48. Plaintiff justifiably relied on Debtor's representations of the valuation of Focus and, as a result, suffered harm exceeding $1.5 million by entering into a purchase agreement that would not have been pursued had Plaintiff known the prior purchase agreement had been rescinded.

49. Had Plaintiff known the truth—that the prior buyer, despite being a lawyer, ultimately rescinded the agreement—Plaintiff would have questioned the legitimacy of the valuation and would not have proceeded under the same terms. This misrepresentation ultimately caused the purchased shares to lose all value.

50. In addition, Plaintiff justifiably relied on Debtor's misrepresentation that the $1 million in funds would be used for the Home Depot business. As a result, Plaintiff suffered harm nearly $1 million by providing these funds, which would not have been provided had Plaintiff known the true purpose was to purchase cryptocurrency—a venture through which the majority of the $1 million was lost.

51. As a result of the misrepresentations, omissions, false pretenses, and actual fraud of Debtor, Plaintiff has incurred actual damages now totaling not less than $2.5 million as of the date of Debtor's bankruptcy, offset by $149,981.64 previously repaid by Debtor. This debt should be deemed nondischargeable.

52. The aforementioned acts of Debtor were done intentionally or with a conscious disregard of the rights of Plaintiff, and with the intent to vex, injure or annoy Plaintiff such as to constitute oppression, fraud, or malice. Thus, Plaintiff is entitled to exemplary and punitive damages in an amount appropriate to punish or set an example of Debtor and to deter such conduct by her in the future, according to proof at trial.

## SECOND CLAIM FOR RELIEF

## (WILLFUL AND MALICIOUS INJURY PURUSANT TO 11 U.S.C. §523(a)(6))

53. Plaintiff refers and incorporates herein each and every allegation contained in paragraphs 1 through 52, of this Complaint as though fully set forth at length herein.

54. Plaintiff asserts that grounds exist for the denial of discharge of Debtor's obligation to Plaintiff pursuant to 11 U.S.C. § 523(a)(6), as follows.

55. Debtor engaged in willful conduct as more fully described above and herein which resulted in damages to Plaintiff. By engaging in acts described above, Debtor acted willfully and maliciously, with specific intent to cause injury to Plaintiff.

56. The Debtor was also subjectively certain the economic injury would occur to the Plaintiff as a result of her actions.

57. Debtor's acts and conduct alleged hereinabove were wrongful, intentional, necessarily caused injury to Plaintiff, and were committed without just cause of excuse.

58. Debtor undertook the wrongful acts identified in this Complaint, which were done intentionally, including, but not limited to intentionally and willfully.

59. Debtor acted maliciously in doing the acts described above with the actual intent to injure the Plaintiff.

60. There is no just cause or excuse for Debtor's actions. As such, the debt to Plaintiff should be deemed nondischargeable.

61. As a direct and proximate consequence of Debtor's willful and malicious misconduct, Plaintiff has incurred actual damages now totaling not less than $2.5 million as of the date of Debtor's bankruptcy, offset by $149,981.64 previously repaid by Debtor. Such damages have caused willful and malicious injury to Plaintiff, and its property in such an amount, or in such additional amounts as may be proved at trial.

### THIRD CLAIM FOR RELIEF

### (SECURITIES FRAUD PURUSANT TO 11 U.S.C. §523(a)(19))

62. Plaintiff refers and incorporates herein each and every allegation contained in paragraphs 1 through 61, of this Complaint as though fully set forth at length herein.

63. Plaintiff asserts that grounds exist for the denial of discharge of Debtor's obligation to Plaintiff pursuant to 11 U.S.C. § 523(a)(19)(A)(ii), as follows.

64. Debtor engaged in fraudulent, deceptive, and/or manipulative conduct as more fully described above and herein which resulted in damages to Plaintiff.

65. Debtor's misrepresentation of material facts, specifically the omission of the rescinded agreement, constitutes common law fraud. By presenting an agreement as indicative of valuation and failing to disclose its nullity, Debtor engaged in a scheme of deceit with the intent to mislead Plaintiff in order to sell Plaintiff stock in her business in the form of an investment therein.

66. The emphasis on the prior buyer's legal credentials and the omission of the rescission amounts to intentional deceit and manipulation. This was an attempt to exploit Plaintiff's reliance on third-party validation, knowing that the withheld information would significantly alter Plaintiff's perception of the shares' value.

67. The fraudulent conduct directly relates to the sale of shares in Focus, thus meeting the requirement that the fraud, deceit, and/or manipulation occurred in connection with the purchase or sale of securities.

68. There is no just cause or excuse for Debtor's actions. As such, the debt to Plaintiff should be deemed nondischargeable.

69. As a direct and proximate consequence of Debtor's willful and malicious misconduct, Plaintiff has incurred actual damages now totaling not less than $1.5 million as of the date of Debtor's bankruptcy. Such damages have caused injury to Plaintiff, and its property in such an amount, or in such additional amounts as may be proved at trial.

**FOURTH CLAIM FOR RELIEF**

**(FAILURE TO EXPLAIN LOSS OF ASSETS PURUSANT TO 11 U.S.C. §727(a)(5))**

70. Plaintiff refers and incorporates herein each and every allegation contained in paragraphs 1 through 69, of this Complaint as though fully set forth at length herein.

71. Plaintiff asserts that grounds exist for the denial of discharge of Debtor's obligation to Plaintiff pursuant to 11 U.S.C. § 727(a)(5), as follows.

72. The Debtor has failed to provide a credible explanation for at least the following:

    a. *Loss of Inventory*: The Debtor admitted during her deposition that she lost inventory valued at approximately $150,000 due to an eviction. She stated she did not have the funds to store or retrieve the inventory, and no records or further details were provided to substantiate the disposition of these assets.

    b. *Unexplained Bank Account Closure*: The Debtor testified that her Bank of America business account was closed, and she found no remaining assets upon logging in. She was unable to specify when the account first had a negative balance or account for the loss of any funds that may have been present before the bankruptcy filing.

    c. *Discrepancies in Business Sale Proceeds*: The Debtor transferred her business, Worldwide Lighting, to a third party (Bai Yi) without receiving any direct payment, claiming compensation was contingent on potential future bonuses. Despite the business's prior profitability, the Debtor did not provide any records or credible explanation for the lack of proceeds from the sale or the disposition of the business assets.

73. Thus, the Debtor has failed to explain satisfactorily certain loss of assets and/or deficiency of assets to meet the Debtor's liabilities.

74. Plaintiff reserves the right to amend the Complaint as more information becomes available. This may include misconduct by the Debtor that is covered by other subsections of 11 U.S.C. §727.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for a judgment against the Debtor:

On its First, Second, Third and Fourth Claims for Relief:

1. For an order determining that the debt owed to Plaintiff is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A).

2. For an order determining that the debt owed to Plaintiff is nondischargeable pursuant to 11 U.S.C. Section 523(a)(6).

3. For an order determining that the debt owed to Plaintiff is nondischargeable pursuant to 11 U.S.C. Section 523(a)(19)(A)(ii).

4. For an order determining that the debt owed to Plaintiff is nondischargeable pursuant to 11 U.S.C. Section 727(a)(5).

5. For an order awarding the Plaintiff such additional relief as this Court deems just and equitable.

Havkin & Shrago

Date: November 14, 2024

/s/ Stella Havkin
Stella Havkin
Attorneys for Plaintiff
Thailight Semiconductor Lighting (HK) Co., Ltd.

**B1040 (FORM 1040) (12/15)**

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Thailight Semiconductor Lighting (HK) Co., Ltd., | **DEFENDANTS**<br>Sufeng Lin |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Havkin and Shrago Attorneys at Law 5950 Canoga Avenue, #400 Woodland Hill, CA 91367 818 999-1568 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Nondischargeability and objection to discharge.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☒ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 2,350,000 |

Other Relief Sought

Nondischargeability of debt and objection to discharge.



**B1040 (FORM 1040) (12/15)**

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** |||||
|---|---|---|---|---|
| NAME OF DEBTOR<br>Sufeng Lin | | BANKRUPTCY CASE NO.<br>6:24-bk-10989-RB |||
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | | DIVISION OFFICE<br>Riverside || NAME OF JUDGE<br>Magdalena Reyes Bordeaux |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** |||||
| PLAINTIFF | | DEFENDANT || ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE || NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Stella Havkin |||||
| DATE<br>11/14/2024 |||| PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Stella Havkin |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

